******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MULLINS, C. J., with whom ALEXANDER, J., joins as to part I, concurring in part and dissenting in part. I agree with and join part II of the majority opinion insofar as it concludes that permissive intervention by foster parents in neglect proceedings is not prohibited by statute. I write separately to express my view that it should be, and likely will be, a rare circumstance that foster parents will be able to satisfy the factors for permissive intervention.

I respectfully disagree with part III of the majority opinion insofar as it concludes that "the right to be heard" provided to foster parents by General Statutes § 46b-129 (p)[1] ordinarily will include the right to be present throughout the proceeding and that a trial court may only limit that right "for good cause shown and within reasonable limits . . . ." Instead, I agree with Judge Elgo's dissent that "the right to be heard" in § 46b-129 (p) entitles foster parents to give an oral or written statement to the court, which may be either sworn or unsworn. See part IV B of Judge Elgo's dissenting opinion. The trial court retains broad discretion to determine when in the course of the proceeding the foster parents may give their statement and also whether foster parents may be present throughout the proceeding based on confidentiality, scheduling, and other concerns that may arise in the course of the proceeding. See id.

I

I agree with the majority that the statutory scheme does not prohibit trial courts from allowing foster parents to intervene if they satisfy the factors for permissive intervention. But I do not think that this is an easy

---

[1] Although § 46b-129 (p) has been amended by the legislature since the events underlying this case; see, e.g., Public Acts 2024, No. 24-126, § 6; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

hurdle for foster parents to surmount. Instead, I think it is quite the opposite. When a trial court decides "whether to grant a motion for permissive intervention," it "balances several factors [including]: the timeliness of the intervention, the proposed intervenor's interest in the controversy, the adequacy of representation of such [interest] by other parties, the delay in the proceedings or other prejudice to the existing parties the intervention may cause, and the necessity for or value of the intervention in resolving the controversy [before the court]." (Internal quotation marks omitted.) *In re Santiago G.*, 325 Conn. 221, 226–27 n.6, 157 A.3d 60 (2017).

I expect that it would be rare that foster parents would be able to satisfy these factors. Although foster parents often develop a deep and meaningful connection with the child in their care and have an interest in the future welfare of that child, it is axiomatic that "[f]oster parents do not enjoy a liberty interest in the integrity of their family unit." (Internal quotation marks omitted.) *Hunte* v. *Blumenthal*, 238 Conn. 146, 164, 680 A.2d 1231 (1996). On the other hand, it is axiomatic that the child and the parents both have constitutionally protected rights at issue in a child protection proceeding. See, e.g., *In re Zakai F.*, 336 Conn. 272, 291–92, 255 A.3d 767 (2020); *In re Teagan K.-O.*, 335 Conn. 745, 755–56, 242 A.3d 59 (2020). In light of the constitutional rights involved and the need for expeditious resolutions to child protection matters, it is difficult to imagine how the interests of the foster parents would weigh in favor of their intervention.

Perhaps the stiffest barrier for foster parents to satisfy under the existing factors for permissive intervention is that a trial court find that the interests that the foster parents seek to represent are not already represented by one of the other parties to the proceeding. See, e.g., *In re Santiago G.*, supra, 325 Conn. 226 n.6.

In a child protection proceeding, the parties typically consist of the parents; the Commissioner of Children and Families, who is responsible for developing and pursuing a permanency plan that is in the best interest of the child; the child's attorney, who represents what the child wants; and, in many cases, a separate guardian ad litem, who is mandated to represent what is in the child's best interest. With all these parties involved, it will be difficult—although perhaps not impossible—for foster parents to demonstrate that they have an interest relative to the child's best interest that would not already be represented. Put simply, if the foster parents are intervening to represent the best interest of the child, that interest should already be represented by one of the other parties to the proceeding.

Moreover, given that the legislature has granted foster parents the statutory right to be heard and comment on the best interest of the child pursuant to § 46b-129 (p), it seems unlikely that a trial court would find "the necessity for or value of the [foster parents'] intervention in resolving the controversy [before the court]." (Internal quotation marks omitted.) Id., 227 n.6. As I explain in part II of this opinion, the trial court has broad discretion to implement the statutory right to be heard so as to allow foster parents to present information regarding the child's best interest. Accordingly, I would expect that only in exceptional cases would this statutory right not be sufficient to convey any relevant information or concerns foster parents want to bring to the court's attention. Indeed, allowing foster parents to intervene as parties risks unwarranted delay in reaching a resolution in these types of cases, in which a timely resolution is vital for the permanency and stability of the child.

I recognize, however, that there might be a unique scenario in which a trial court could determine that foster parents have surmounted the various hurdles for

permissive intervention. My point is simply that, although foster parents are not prohibited from intervening by statute, satisfying the factors for permissive intervention, in my view, will be quite rare.

## II

In part III of the majority opinion, the majority concludes that "the right of eligible foster parents to be heard under § 46b-129 (p) ordinarily will include the right to be present throughout the proceeding in question . . . [but that] the trial court retains discretion, for good cause shown and within reasonable limits, to broaden or restrict a foster parent's right to be heard if the court concludes that such a modification is necessary to ensure that the proceeding is conducted in a manner that best serves the rights at stake and objectives to be achieved." I cannot agree. I see nothing in the statute or the legislative history that guides me to the conclusion that the legislature intended nonparty foster parents to be present during the whole proceeding. In fact, the legislature has been clear that, generally, nonparties should not be present during child protection proceedings unless they receive permission from the judge. See General Statutes § 51-30 (b) ("[w]hen the court is hearing juvenile matters, no person may be allowed in the room except as permitted by the presiding judge in accordance with section 46b-122"). Instead, I agree with Judge Elgo's dissent to the extent it concludes that "the right to be heard for foster parents under § 46b-129 (p) includes the right to make a statement with respect to the child's best interest at a time left to the discretion of the trial court." Part IV B of Judge Elgo's dissenting opinion.

In my view, the trial court retains broad discretion to manage the docket and the proceeding, including the right to limit or expand, within reason, the presence of the foster parents when it deems it to be appropriate.

Should a trial court deem it necessary for foster parents to remain in the courtroom throughout the proceeding, or for any portions thereof, it may, of course, do so. See General Statutes § 46b-122 (c) ("Any judge hearing a juvenile matter, in which a child is alleged to be uncared for, neglected, abused or dependent or in which a child is the subject of a petition for termination of parental rights, may permit any person whom the court finds has a legitimate interest in the hearing or the work of the court to attend such hearing. Such person may include a party . . . [or] foster parent . . . ."). As a result, I would not conclude that foster parents' right to be heard in a child protection proceeding requires that they be present for the entire proceeding at issue.

Accordingly, I respectfully concur with parts I and II of the majority opinion, and I respectfully dissent from part III of the majority opinion.